IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EDDISON WALTERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NUMBER: CV-10-01148 |
| ) | |
| LIME FINANCIAL SERVICES, LTD, ) | |
| ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Comes Now, Plaintiff Eddison Walters. ("Walters" or "Plaintiff"), by and through its undersigned counsel, and hereby responds to Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### INTRODUCTION

The Plaintiff has been subjected to Truth-in-Lending Act ("TILA") violations that occurred at different times. The first violations took place at the time of the consummation of their loan. The second set of violations took place when Lime failed to recognize his rightful rescission of the loan. At the heart of the Plaintiff's claim is the right to cancel a loan transaction, as provided under TILA. Attendant to that right is the explicit duty of a lender to "clearly and conspicuously" make all the "material" disclosures required by TILA when a consumer mortgages his homestead. Lime, the originator of the loan, failed to comply with that duty by failing to provide the Plaintiff a proper Right-to-Cancel notice. Lime is liable here under the provisions of 15 U.S.C. § 1641, because it claims to be an assignee of the loan.

### A. The Plaintiff's RTC notice was defective.

Lime cites *McMillian v. AMC Mortg. Servs.*, 560 F. Supp. 2d 1210, (S.D. Ala. 2008) and

*Ward v. Lime Fin. Servs.*, 2009 U.S. Dist. LEXIS 98619 (S.D. Ala. Oct. 5, 2009) for the proposition that the use of an undated RTC notice by a lender does not give a borrower an extended right to rescind his loan. Both *McMillian* and *Ward* rely primarily on *Smith v. Highland Bank*, 108 F.3d 1325, 1326 (11th Cir. 1997) and *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996).

The *McMillian* Court stated, "[t]he "The Smith panel also opined that "Congress would not have us adopt a hypertechnical reading of any part of TILA." Id. at 1327 n.4. This view is fully consistent with a prior panel decision indicating that "TILA does not require perfect notice; rather it requires a clear and conspicuous notice of recision (Sic) rights." *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996) (notice of rescission rights satisfies TILA where it is "reasonably clear" and "provides sufficient notice"). *McMillian v. AMC Mortg. Servs.*, 560 F. Supp. 2d 1210, 1218 (S.D. Ala. 2008).

Likewise, the *Ward* Court said, ""TILA does not require perfect notice; rather it requires a clear and conspicuous notice of recision (sic) rights." *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996); see *Smith v. Highland Bank*, 108 F.3d 1325, 1326 (11th Cir. 1997). "Unlike the general civil liability section of the Truth-in-Lending Act, 15 U.S.C. s 1640, which provides for liability for any non-disclosure, the rescission provisions under 15 U.S.C. § 1635 require that the nondisclosure be material."" *Ward v. Lime Fin. Servs.*, 2009 U.S. Dist. LEXIS 98619 (S.D. Ala. Oct. 5, 2009).

Both *Smith*[1] and *Veale*[2] were interpreting TILA and Regulation Z as they were prior to the 1995 Amendments. The Federal Reserve Board re-promulgated the requirements for the

---

[1] "The transaction was closed on February 28, 1994." *Smith v. Highland Park*, 915 F. Supp. 281, 284 (N.D. Ala. 1996)
[2] "In July of 1989, the Veales borrowed $361,800 from Citibank." *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 579 (11th Cir. 1996)

2

rescission notice in 1996, a year after those amendments. See 61 Fed. Reg. 49,237 (Sept 19th 1996). Specifically the Federal Reserve stated, "[t]hese revisions implement the Truth in Lending Act amendments of 1995." Furthermore the new Official Staff Commentary to 12 C.F.R. § 226.23(b)(1) states, "3. Content. The notice <u>must</u> include all of the information outlined in Section 226.23(b)(1)(i) through (v)." (Emphasis added.)

"The Official Staff Commentary to Regulation Z published by the Board is binding and dispositive in TILA cases unless the commentary is determined to be demonstrably irrational." *Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (U.S. 1980) ("[D]eference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive").

15 U.S.C. § 1635(a) specifically calls on creditors to, "clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section." In other words, the statute mandates that Federal Reserve Board promulgate "appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section." In accordance with that mandate the Federal Reserve Board promulgated 12 C.F.R. § 226.23(b)(1) which states:

> (b)(1) *Notice of right to rescind.* In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this section.

(v) **The date the rescission period expires.**

(Emphasis added.)

Clearly, *Ward* and *McMillian* courts did not give proper deference to Regulation Z or the Official Staff Commentary. Also, their reliance on *Smith* and *Veale* was misplaced in light of the fact that the Board reaffirmed its position that the RTC notice must contain the date the rescission period expires.

Lime, in its reply, will undoubtedly cite a recent Seventh Circuit case, *Melfi v. WMC Mortg. Corp.*, 568 F.3d 309 (1st Cir. 2009). In affirming the dismissal of a TILA rescission case by a District Court the First Circuit said:

> [T]he argument for allowing Melfi to extend his deadline from three days to three years depends on this premise: that any flaw or deviation should be penalized automatically in order to deter such errors in the future. If Congress had made such a determination as a matter of policy, a court would respect that determination; possibly, this would also be so if the Board had made the same determination. See *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Melfi argues at length that we owe such deference to the Board.
> The answer is that there is no evidence in TILA or any Board regulation that either Congress or the Board intended to render the form a nullity because of an uncompleted blank in the form or similar flaw where, as here, it could not possibly have caused Melfi to think that he had months in order to rescind. The central purpose of the disclosure--the short notice period for rescission at will--was plain despite the blanks. Melfi's argument assumes, rather than establishes, that a penalty was intended.
> Some cases finding a blank notice form to be grounds for rescission even though harmless were decided under an earlier version of TILA. In 1995,

> Congress added a new subsection to TILA, titled "Limitation on Rescission Liability." It provided that borrower could not rescind "solely from the form of written notice used by the creditor . . . if the creditor provided the [borrower] the appropriate form of written notice published and adopted by the Board . . . ." Truth in Lending Act Amendments of 1995, Pub L. No. 104-29, § 5, 109 Stat. 271, 274 (1995) (codified at 15 U.S.C. § 1635(h)).
>   Read literally, this safe harbor may not be available to WMC because, while it used the Board's form of notice, it did not properly fill in the blanks. But the TILA amendments were aimed in general to guard against widespread rescissions for minor violations. *McKenna v. First Horizon Loan Corp.*, 475 F.3d 418, 424 (1st Cir. 2007). To this extent, Congress has now leaned against a penalty approach and, perhaps, weakened the present force of the older case law favoring extension of the rescission deadline.
>   In any event, in the absence of some direction from Congress or the Board to impose a penalty, we see no policy basis for such a result. Where, as here, the Board's form was used and a reasonable borrower cannot have been misled, allowing a windfall and imposing a penalty serves no purpose and, further, is at odds with the general approach already taken by this court in *Palmer*.
>
> *Melfi* at 312-313.

The First Circuit, in *Melfi*, completely ignores the language quoted from the Official Staff Commentary above and incorrectly and states, as quoted above, "that there is no evidence in TILA or any Board regulation that either Congress or the Board intended to render the form a nullity because of an uncompleted blank in the form or similar flaw[.]" Compare Judge Boudin's statement to the Commentary: "The notice **must** include all of the information outlined in Section 226.23(b)(1)(i) through (v)." (Emphasis added.)

### B. Defendants request to determine the ability of Plaintiff's to tender is premature.

Lime seeks that prior to finding if a recession claim exists, the Court must dismiss the claim by plaintiff because of the possible inability for Plaintiff to tender. This aspect of Lime's motion is inappropriately premature. Furthermore, the request is not an appropriate subject of Rule 12 dismissal. Rule 12 contemplates dismissal on all or part of a claim, counterclaim, or cross-claim. Lime's requests address a procedural remedy effecting a substantive right which

5

this Court has yet to establish.

The distinction between the substantive right of rescission and the Court's authority to fashion a procedure was also reinforced by the 2004 amendments to the Federal Reserve Board's Official Commentary to Reg. Z.

> 1. *Modifications.* The procedures outlined in [12 C.F.R.] § 226.23(d)(2) and (3) may be modified by a court. For example, when a consumer is in bankruptcy proceedings and prohibited from returning anything to the creditor, or when the equities dictate, a modification might be made. *The sequence of procedures under § 226.23(d)(2) and (3), or court's modification of those procedures under § 226.23(d)(4), does not affect a consumer's substantive right to rescind and to have the loan amount adjusted accordingly. Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property.*

69 Fed. Reg. 16,769, 16,774 (2004)(emphasis added).

The last sentence of the Commentary describes the proper sequence of issues to be addressed in rescission: Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property. Id.

The Court has yet to determine whether the substantive right to rescind exists. Once that determination is made and assuming it is made in Plaintiff's favor, the Court must then decide at least the following issues in order to fashion a remedy consistent with the substantive right:

-The amount of payments made by Plaintiff to LIME which must be repaid by LIME to Plaintiffs;

-Whether the reimbursement to Plaintiff should be made as a separate payment from LIME or in the form of a credit against the outstanding principal balance;

-Whether there exist circumstances which justify a deviation from the procedure set out in Section 1635(b);

-The extent of the tender, if any, owed by the Plaintiffs back to LIME;

-What would be an appropriate method of satisfying the Plaintiff's tender obligations given Congress' mandate that any such payment not be "impracticable or inequitable?" (See Section 1635(b))

It is the undersigned's experience in litigating and settling rescission cases that many, if not all, of the basic facts surrounding a remedy should be established by agreement, once the dispute of whether the substantive rescission right is resolved.

In any event, the suggestion by LIME that Plaintiff's is financially unable to pay a tender is premature and inappropriate. There is no reason to assume that, once the LIME lien is removed from Plaintiff's property, Plaintiff could use the equity to finance a loan sufficient to pay whatever amount this Court determines is due to LIME. One way this could be approached would be for the Court to require the parties to attempt to agree on the basic facts which will dictate the amounts of credit due from LIME to Plaintiffs and *vis versa* (i.e., the amounts of payments made, prepaid closing costs etc...)[3] Once those basic facts were established, the Court could order LIME to produce a Payoff Statement reflecting the appropriate credits due to Plaintiff which would reduce the amount required to retire the debt. Armed with the Payoff Statement, Plaintiff would be in a good position to arrange for refinancing of the amount required to retire the debt, assuming he is given a reasonable time to do so.

This is just one suggestion of a procedure which would pay respect to both parties' rights and obligations under Section 1635, while at the same time preserving the Plaintiff's substantive

---

[3] In the unlikely event that the parties could not agree on these objective facts, the Court would have to take evidence and make a determination.

7

rights and Section 1635's role as "an important enforcement tool, insuring creditor compliance with TILA's disclosure requirements." *Williams v. Homestake Mortgage Company*, 968 F.3d 1137, 1165 (11 Cir. 1992),

Finally, Judge Steele in the Southern District of Alabama in a recent opinion on this exact issue stated it is not proper for the Court to discuss the tender issue until after a trial on the merits has been held.

> In official staff interpretations to TILA regulations that it promulgated, the Federal Reserve Board of Governors has cautioned that "[w]here the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property." 69 Fed. Reg. 16,769, 16,774 (2004). The Court perceives no reason to deviate from that sensible, efficient methodology here. If, following trial on the merits, it is determined that the Williamses are entitled to rescind the loan, the Court will address at that point the proper procedures for implementing the rescission. *No constructive purpose would be served by the Court wading into those mechanical details at this time*; therefore, the Court declines HLC's invitation to do so.
>
> *Williams v. Saxon Mortg. Co.*, 2008 U.S. Dist. LEXIS 131, 26-27 (S.D. Ala. Jan. 2, 2008)(emphasis added).

Plaintiff stands ready to suggest and propose other methods of satisfying his tender obligations once the Court has determined that his loan is subject to a rescission right and has determined what the tender amount should be. However, such issues are not appropriately addressed at this time.

## CONCLUSION

For all the reasons stated above, LIME's motion is due to be denied.

Respectfully submitted this 16th day of August, 2010.

_____
James D. Patterson (PATTJ6485)
Kenneth J. Riemer (RIEMK0812)
Earl P. Underwood, Jr. (UNDDEE6591)
Attorneys for Plaintiff
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212 (telephone)
251.433.7172 (fax)
jpatterson@alalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on _August 16th, 2010_, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John David Collins
MAYNARD, COOPER & GALE, P.C.
2400 Regions/Harbert Plaza
1901 Sixth Ave. North
Birmingham AL 35203

_____
James D. Patterson, Esq.